# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HIGH TECH HAIR LLC AND CAPUCINNO PIZZERIA RISTORANTE T/A LaVILLA, ROSE GLAM HAIR STUDIO, LLC, individually and on behalf of all others similarly situated, | Civil Action No. _____ |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| ERIE INSURANCE EXCHANGE, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiffs High Tech Hair LLC ("High Tech Hair"), Capucinno Pizzeria Ristorante t/a LaVilla ("La Villa"), and Rose Glam Hair Studio, LLC ("Rose Glam"), individually and on behalf of the other members of the below-defined nationwide classes (collectively, the "Class"), bring this class action against Defendant Erie Insurance Exchange ("Erie"), and in support thereof states the following:

## I.      NATURE OF THE ACTION

1.      Plaintiff High Tech Hair owns and operates High Tech Hair Salon, a hair salon and spa, located in Philadelphia, Pennsylvania.  High Tech Hair has served Philadelphia and the surrounding areas for close to 35 years, its longevity a testament to the quality of its services. High Tech Hair's existence, however, is now threatened by SARS-CoV-2. [1]

---

[1]  SARS-CoV-2 or the Coronavirus is also sometimes referred to by the name of the disease which it causes and that spreads it, COVID-19.  For ease of reference, we refer to the virus as COVID-19 throughout, unless specificity stated otherwise.

2.     Plaintiff La Villa owns and operates La Villa Pizza & Family Restaurant, a family style Italian restaurant, located in Morrisville, Pennsylvania.   La Villa is a family-owned restaurant that has been successfully serving the Bucks County community and surrounding areas for over 20 years.  La Villa's existence is now threatened by COVID-19.

3.     Plaintiff Rose Glam owns and operates Rose Glam Hair Studio, a salon located in Colonial Heights, Virginia.  Rose Glam's existence is threatened by COVID-19.

4.     To protect their businesses in the event that it suddenly had to suspend operations for reasons outside of their control, or if they had to act in order to prevent further property damage, Plaintiffs purchased insurance coverage from Erie, including commercial property coverage, as set forth in Erie's Ultrapack Plus Commercial Property Coverage Form ("Ultrapack Property Coverage Form").

5.     Erie's Ultrapack Property Coverage Form provides "Income Protection" coverage, which promises to pay for loss of income sustained due to partial or total interruption of business resulting directly from loss or damage to property on the insured premises.

6.     Erie's Ultrapack Property Coverage Form also provides "Extra Expense" coverage, which promises to pay necessary expenses incurred due to partial or total interruption of business resulting directly from loss or damage to property on the insured premises.

7.     Erie's Ultrapack Property Coverage Form also provides "Civil Authority" coverage, which promises to pay for loss of income sustained, and extra expense incurred, as a result of an action of a civil authority that prohibits access to the insured premises, when the civil authority action is taken in response to damage to property other than the insured premises but within one mile of the insured premises.

8.     Erie's Ultrapack Property Coverage Form, under a section entitled "Your Duties After a Loss" mandates that Erie's insureds must, in case of a covered loss, "[p]rotect the property from further damage" and "make reasonable repairs and keep a record of all repair costs."  This is commonly referred to as "Sue and Labor" coverage.

9. Unlike many property coverage forms that provide Income Protection coverage (also referred to as "business interruption" coverage), including other Erie property coverage forms, Erie's Ultrapack Property Coverage Form does not include, and is not subject to, any exclusion for losses caused by the spread of viruses or communicable diseases.

10. Plaintiff High Tech Hair was forced to suspend or reduce business at High Tech Hair due to COVID-19 and the resultant closure orders issued by civil authorities in Pennsylvania.

11. Plaintiff La Villa was forced to suspend or reduce business at La Villa due to COVID-19 and the resultant closure orders issued by civil authorities in Pennsylvania.

12. Plaintiff Rose Glam was forced to suspend or reduce business at Rose Glam Hair Studio due to COVID-19 and the resultant closure orders issued by civil authorities in Virginia.

13. Upon information and belief, Erie has, on a widescale and uniform basis, refused to pay its insureds under its Ultrapack Income Protection, Civil Authority, Extra Expense, and Sue and Labor coverages for losses suffered due to COVID-19, any orders by civil authorities that have required the necessary suspension of business, and any efforts to prevent further property damage or to minimize the suspension of business and continue operations.

## II.    JURISDICTION AND VENUE

14. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because Defendant and at least one member of the Class are citizens of different states and because: (a) the Class consists of at least 100 members; (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs; and (c) no relevant exceptions apply to this claim.

15. Venue is proper in this District under 28 U.S.C. § 1391, because Plaintiffs High Tech Hair and La Villa reside in this District and a substantial portion of the acts and conduct giving rise to the claims occurred within the District.

### III.    THE PARTIES

*Plaintiffs*

16.    Plaintiff High Tech Hair is a Pennsylvania LLC, with its principal place of business in Philadelphia, Pennsylvania.

17.    Plaintiff La Villa is a Pennsylvania corporation, with its principal place of business in Morrisville, Pennsylvania.

18.    Plaintiff Rose Glam is a Virginia LLC, with its principal place of business in Colonial, Virginia.

*Defendant*

19.    Defendant Erie is an insurance company organized under the laws of Pennsylvania, with its principal place of business in Erie, Pennsylvania.  It is authorized to write, sell, and issue insurance policies providing property and business income coverage in Pennsylvania.  At all times material hereto, Erie conducted and transacted business through the selling and issuing of insurance policies within Pennsylvania, including, but not limited to, selling and issuing property coverage to Plaintiffs.

### IV.    FACTUAL BACKGROUND

**A.    *The Ultrapack Property Coverage Form***

20.    In return for the payment of a premium, Erie issued Policy No. Q971587687 to Plaintiff High Tech Hair for a policy period of June 2, 2019 to June 2, 2020, including a Ultrapack Property Coverage Form.  Policy No. Q971587687 is attached hereto as Exhibit A.  Plaintiff High Tech Hair has performed all of its obligations under Policy No. Q971587687, including the payment of premiums.  The Covered Property, with respect to the Special Property Coverage Form, is High Tech Hair Salon at 13023 Bustleton Avenue, Philadelphia, Pennsylvania 19116.

21.    In return for the payment of a premium, Erie issued Policy No. Q971696420 to Plaintiff La Villa for a policy period of October 24, 2019 to October 24, 2020, including a

4

Ultrapack Property Coverage Form.  Policy No. Q971696420 is attached hereto as Exhibit B. Plaintiff La Villa has performed all of its obligations under Policy No. Q971696420, including the payment of premiums.  The Covered Property, with respect to the Commercial Property Coverage Part, is La Villa Pizza & Family Restaurant at 21 S. Pennsylvania Avenue, Morrisville, Pennsylvania 19067.

22.     In return for the payment of a premium, Erie issued Policy No. Q972201131 to Plaintiff Rose Glam for a policy period of October 24, 2019 to October 24, 2020, including a Ultrapack Property Coverage Form.  Policy No. Q972201131 is attached hereto as Exhibit C. Plaintiff Rose Glam has performed all of its obligations under Policy No. Q972201131, including the payment of premiums.  The Covered Property, with respect to the Special Property Coverage Form, is Rose Glam Hair Salon at 192 Southgate Square, Colonial Heights, Virginia 23824.

23.     The policies issued to Plaintiffs High Tech Hair, La Villa and Rose Glam are identical in every relevant respect.

24.     In many parts of the world, property insurance is sold on a specific peril basis. Such policies cover a risk of loss if that risk of loss is specifically listed (e.g., hurricane, earthquake, H1N1, etc.).  Most property policies sold in the United States, however, including those sold by Erie, are all-risk property damage policies.  These types of policies cover all risks of loss except for risks that are expressly and specifically excluded.

25.     In the Ultrapack Property Coverage Form, Erie did not exclude or limit coverage for losses from the spread of viruses.

26.     The Ultrapack Property Coverage Form excludes coverage for loss or damage caused by the presence of bacteria or fungus, but notably does not exclude coverage for loss or damage caused by the presence of a virus.

27.     By contrast, Erie's Ultraflex Property Coverage Form (which was not the policy Plaintiffs chose) explicitly excludes coverage for loss or damage caused by the presence of a

virus.  Erie thus knew exactly how to exclude coverage for damage or loss caused by viruses but chose not to do so in the Ultrapack Property Coverage Form.

28.     Plaintiffs' and other class members' property have suffered direct physical loss or damage.  Due to SARS-CoV-2 or COVID-19, their property has become unsafe for its intended purpose and thus has suffered physical loss or damage.  Their property's business functions have been impaired.  If they were to conduct business as usual, the disease and virus would show up and people would get sick.  This is not a non-physical or remote loss such as one occasioned by a breach of contract, loss of a market, or the imposition of a governmental penalty.  It is a direct physical loss.  In its current condition, our property is not functional for its business purposes.

29.     The presence of virus or disease can constitute physical damage to property, as the insurance industry has recognized since at least 2006.  When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm, ISO, circulated a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property.  When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses.  Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

30.     Losses due to COVID-19 are a Covered Cause of Loss under Erie policies with the Ultrapack Property Coverage Form.

31.     In the Ultrapack Property Coverage Form, Erie agreed to pay, under its "Income Protection" coverage, for its insureds' loss of income sustained due to partial or total interruption of business resulting directly from loss or damage to property on the insured premises.

32.     "Income" means the sum of net income (net profit or loss before income taxes) that would have been earned or incurred and necessary continuing operating expenses incurred by the business such as payroll expenses, taxes, interests, and rents.

33.     In the Ultrapack Property Coverage Form, under "Extra Expense" coverage, Erie agreed to pay necessary expenses incurred due to partial or total interruption of business resulting directly from loss or damage to property on the insured premises.

34.     In the Ultrapack Property Coverage Form, under "Civil Authority" coverage, Erie agreed to pay for loss of income sustained, and extra expense incurred, as a result of an action of a civil authority that prohibits access to the insured premises, when the civil authority action is taken in response to damage to property other than the insured premises but within one mile of the insured premises.

35.     In the Ultrapack Property Coverage Form, under a section entitled "Your Duties After a Loss," Erie mandated that its insureds must, in case of a covered loss, "[p]rotect the property from further damage" and "make reasonable repairs and keep a record of all repair costs."  This is commonly referred to as "Sue and Labor" coverage.

36.     Losses caused by COVID-19 and the related orders issued by local, state, and federal authorities triggered the Income Protection, Extra Expense, Civil Authority, and Sue and Labor provisions of the Ultrapack Property Coverage Form.

**B.     *The Covered Cause of Loss***

37.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's business (the "Closure Orders").

**1.     <u>The Virginia Closure Orders</u>**

38.     Effective March 23, 2020, the State of Virginia issued a civil authority order prohibiting public access to a wide variety of businesses, including K-12 schools, dining establishments, and recreational and entertainment businesses, including beauty salons and spas. The order was in effect through May 15, 2020.

39.     Effective March 30, 2020, the State of Virginia issued civil authority order, prohibiting the gathering of more than ten individuals and requiring Virginia residents to stay at their places or residence, with certain exceptions, none of which exceptions allowed for travel to a hair salon.  The order was in effect through, at least, May 15, 2020.

40.     Effective May 15, 2020, the State of Virginia issued a civil authority order limiting public access to certain business, including personal care and grooming services, retail stores, dining establishments, and fitness and exercise facilities.  With respect to beauty salons and spas, the civil authority order limited occupancy to 50% of the lowest occupancy load on the certificate of occupancy and to one appointment per service provider at a time.  The order was in effect through June 10, 2020.

### 2.     The Philadelphia and Pennsylvania Closure Orders

41.     Effective March 19, 2020, the State of Pennsylvania issued a civil authority order prohibiting any person or entity from operating a place of business in Pennsylvania that is not a life-sustaining business.  This order was amended on April 20, 2020, but is still in effect, and still prohibits the operation of Plaintiff's business.

42.     Effective March 23, 2020 the City of Philadelphia issued a civil authority order prohibiting the operation of all "non-essential" businesses, which includes Plaintiffs' business. The order is in effect until further notice.

43.     Effective April 1, 2020, the State of Pennsylvania issued a civil authority order requiring all Pennsylvania residents to stay at home except as necessary to access, support, or provide life-sustaining business, emergency, or government services.  This order has been in effect since April 1, 2020 and is in effect in Philadelphia County until at least June 4, 2020.

44.     The Pennsylvania and Philadelphia Closure Orders were issued in response to the rapid spread of COVID-19 throughout Pennsylvania and Philadelphia

### 3.     The Impact of COVID-19 and the Closure Orders

45.     The presence of COVID-19 caused direct physical loss of or damage to the covered property under Plaintiffs' policies, and the policies of the other Class members, by denying use of and damaging the covered property.

46.     COVID-19 rendered Plaintiffs' and the other Class members' premises and facilities unusable for their intended business function and the properties have thus suffered physical loss or damage.  In their current condition, Plaintiffs' and the other Class members' premises and facilities are not functional for their business purpose.

47.     The Closure Orders, including the issuance of the Virginia, Philadelphia and Pennsylvania Closure Orders, prohibited access to Plaintiffs and the other Class members' Covered Property, and the area immediately surrounding Covered Property, in response to dangerous physical conditions resulting from a Covered Cause of Loss.

48.     As a result of the presence of COVID-19 and the Closure Orders, Plaintiffs and the other Class members lost business income and incurred extra expense.

49.     Plaintiff Rose Glam submitted a claim for loss to Erie under its policy due to the presence of COVID-19 and the Closure Orders, but Erie denied that claim.

50.     Plaintiff La Villa submitted a claim for loss to Erie under its policy due to the presence of COVID-19 and the Closure Orders, but Erie denied that claim.

51.     Plaintiff High Tech Hair attempted to submit its claim for loss to Erie under its policy due to the presence of COVID-19 and the Closure Orders, but was informed by its agent that Erie was not paying for such losses under Plaintiff's type of policy.

## V.     CLASS ACTION ALLEGATIONS

52.     Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated.

53.     Plaintiffs La Villa and Rose Glam seek to represent nationwide classes defined as:

- All persons and entities that: (a) had Income Protection coverage under an Ultrapack Property Coverage Form issued by Erie; (b)

suffered a suspension of business related to COVID-19, at the premises covered by their Erie property insurance policy; (c) made a claim under their property insurance policy issued by Erie; and (d) were denied Income Protection coverage by Erie for the suspension of business resulting from the presence or threat of COVID-19 (the "Income Protection Breach Class").

- All persons and entities that: (a) had Civil Authority coverage under an Ultrapack Property Coverage Form issued by Erie; (b) suffered loss of income and/or extra expense caused by a Closure Order; (c) made a claim under their property insurance policy issued by Erie; and (d) were denied Civil Authority coverage by Erie for the loss of income and/or expense caused by a Closure Order (the "Civil Authority Breach Class").

- All persons and entities that: (a) had Extra Expense coverage under an Ultrapack Property Coverage Form issued by Erie; (b) sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Erie property insurance policy; (c) made a claim under their property insurance policy issued by Erie; and (d) were denied Extra Expense coverage by Erie despite their efforts to minimize the suspension of business caused by COVID-19 (the "Extra Expense Breach Class").

- All persons and entities that: (a) had a Sue and Labor provision under an Ultrapack Property Coverage Form issued by Erie; (b) sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their Erie property insurance policy; (c) made a claim under their property insurance policy issued by Erie; and (d) were denied Sue and Labor coverage by Erie in connection with the suspension of business caused by COVID-19 (the "Sue and Labor Breach Class").

54.     Plaintiffs High Tech Hair, La Villa, and Rose Glam seek to represent nationwide classes defined as:

- All persons and entities with Income Protection coverage under an Ultrapack Property Coverage Form issued by Erie that suffered a suspension of business due to COVID-19 at the premises covered by the business income coverage (the "Income Protection Declaratory Judgment Class").

- All persons and entities with Civil Authority coverage under a Ultrapack Property Coverage Form issued by Erie that suffered

loss of income and/or extra expense caused by a Closure Order
(the "Civil Authority Declaratory Judgment Class").

- All persons and entities with Extra Expense coverage under a
Ultrapack Property Coverage Form issued by Erie that sought to
minimize the suspension of business in connection with COVID-
19 at the premises covered by their Erie property insurance policy
(the "Extra Expense Declaratory Judgment Class").

- All persons and entities with a Sue and Labor provision under a
Ultrapack Property Coverage Form issued by Erie that sought to
prevent property damage caused by COVID-19 by suspending or
reducing business operations, at the premises covered by their Erie
property insurance policy (the "Sue and Labor Declaratory
Judgment Class").

55.     Excluded from each defined Class is Defendant and any of its members, affiliates,

parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental

entities; and the Court staff assigned to this case and their immediate family members.  Plaintiffs

reserve the right to modify or amend each of the Class definitions, as appropriate, during the

course of this litigation.

56.     This action has been brought and may properly be maintained on behalf of each

Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

57.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).**  The members of each

defined Class are so numerous that individual joinder of all Class members is impracticable.

While Plaintiffs are informed and believe that there are thousands of members of each Class, the

precise number of Class members is unknown to Plaintiffs but may be ascertained from

Defendant's books and records.  Class members may be notified of the pendency of this action

by recognized, Court-approved notice dissemination methods, which may include U.S. Mail,

electronic mail, internet postings, and/or published notice.

58.     **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2)**

**and 23(b)(3).**  This action involves common questions of law and fact, which predominate over

any questions affecting only individual Class members, including, without limitation:

a.  whether Erie issued all-risk policies to the members of the Class in exchange for payment of premiums by the Class members;

b.  whether the Class suffered a covered loss based on the common policies issued to members of the Class;

c.  whether Erie wrongfully denied all claims arising from COVID-19;

d.  whether Erie's Income Protection coverage applies to a suspension of business caused by COVID-19;

e.  whether Erie's Civil Authority coverage applies to a loss of income caused by the orders of state governors requiring the suspension of business as a result of COVID-19;

f.  whether Erie's Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

g.  whether Erie's Sue and Labor provision applies to require Erie to pay for efforts to reduce damage caused by COVID-19;

h.  whether Erie has breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to COVID-19 and the related closures; and

i.  whether Plaintiffs and the Class are entitled to an award of reasonable attorney fees, interest and costs.

59.  **Typicality—Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and the other Class members are all similarly affected by Defendant's refusal to pay under its Income Protection, Civil Authority, Extra Expense, and Sue and Labor coverages.  Plaintiffs' claims are based upon the same legal theories as those of the other Class members.  Plaintiffs and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

60.     **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members who they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to pay the amounts owed under their policies, and Plaintiffs intend to prosecute this action vigorously.  The interests of the above-defined Classes will be fairly and adequately protected by Plaintiffs and their counsel.

61.     **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).**  Plaintiffs seek class-wide adjudication as to the interpretation, and resultant scope, of Defendant's Income Protection, Civil Authority, Extra Expense, and Sue and Labor coverages.   The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant. Moreover, the adjudications sought by Plaintiffs could, as a practical matter, substantially impair or impede the ability of other Class members, who are not parties to this action, to protect their interests.

62.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendant acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members.

63.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action

device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT – INCOME PROTECTION COVERAGE

**(Claim Brought on Behalf of the Income Protection Breach Class)**

64.    Plaintiffs La Villa and Rose Glam repeat and reallege Paragraphs 1-63 as if fully set forth herein.

65.    Plaintiffs bring this Count individually and on behalf of the other members of the Income Protection Breach Class.

66.    Plaintiffs' Erie policies, as well as those of the other Income Protection Breach Class members, are contracts under which Erie was paid premiums in exchange for its promise to pay Plaintiffs and the other Income Protection Breach Class members' losses for claims covered by the policy.

67.    In the Ultrapack Property Coverage Form, Erie agreed to pay for its insureds' loss of income sustained due to partial or total interruption of business resulting directly from loss or damage to property on the insured premises.

68.    COVID-19 caused direct physical loss and damage to Plaintiffs' and the other Income Protection Breach Class members' Covered Properties, requiring suspension of operations at the Covered Properties.  Losses caused by COVID-19 thus triggered the Income Protection provision of Plaintiffs and the other Income Protection Breach Class members' Erie policies.

69.    Plaintiffs and the other Income Protection Breach Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Erie or Erie is estopped from asserting them, and yet Erie has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

14

70.     By denying coverage for any Business Income losses incurred by Plaintiffs and the other Income Protection Breach Class members in connection with the COVID-19 pandemic, Erie has breached its coverage obligations under the policies.

71.     As a result of Erie's breaches of the policies, Plaintiffs and the other Income Protection Breach Class members have sustained substantial damages for which Erie is liable, in an amount to be established at trial.

**COUNT II**
**BREACH OF CONTRACT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Breach Class)**

72.     Plaintiffs La Villa and Rose Glam repeat and reallege Paragraphs 1-63 as if fully set forth herein.

73.     Plaintiffs bring this Count individually and on behalf of the other members of the Civil Authority Breach Class.

74.     Plaintiffs' Erie insurance policies, as well as those of the other Civil Authority Breach Class members, are contracts under which Erie was paid premiums in exchange for its promise to pay Plaintiffs and the other Civil Authority Breach Class members' losses for claims covered by the policy.

75.     In the Ultrapack Property Coverage Form, Erie agreed pay for loss of income sustained, and extra expense incurred, as a result of an action of a civil authority that prohibits access to the insured premises, when the civil authority action is taken in response to damage to property other than the insured premises but within one mile of the insured premises.

76.     The Closure Orders triggered the Civil Authority provision under Plaintiffs' and the other members of the Civil Authority Breach Class's Erie insurance policies.

77.     Plaintiffs and the other members of the Civil Authority Breach Class have complied with all applicable provisions of the policies, and/or those provisions have been waived by Erie, or Erie is estopped from asserting them, and yet Erie has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

78.     By denying coverage for any business losses incurred by Plaintiffs and other members of the Civil Authority Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Erie has breached its coverage obligations under the policies.

79.     As a result of Erie's breaches of the policies, Plaintiffs and the other members of the Civil Authority Breach Class have sustained substantial damages for which Erie is liable, in an amount to be established at trial.

## COUNT III
## BREACH OF CONTRACT – EXTRA EXPENSE COVERAGE
### (Claim Brought on Behalf of the Extra Expense Breach Class)

80.     Plaintiffs La Villa and Rose Glam repeat and reallege Paragraphs 1-63 as if fully set forth herein.

81.     Plaintiffs bring this Count individually and on behalf of the other members of the Extra Expense Breach Class.

82.     Plaintiffs' Erie insurance policies, as well as those of the other Extra Expense Breach Class members, are contracts under which Erie was paid premiums in exchange for its promise to pay Plaintiffs and the other Extra Expense Breach Class members' losses for claims covered by the policy.

83.     In the Ultrapack Property Coverage Form, Erie agreed to pay necessary expenses incurred due to partial or total interruption of business resulting directly from loss or damage to property on the insured premises.

84.     Due to COVID-19 and the Closure Orders, Plaintiffs and the other members of the Extra Expense Breach Class incurred extra expense under the Ultrapack Property Coverage Form

16

85.     Plaintiffs and the other members of the Extra Expense Breach Class have complied with all applicable provisions of the policies and/or those provisions have been waived by Erie or Erie is estopped from asserting them, and yet Erie has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

86.     By denying coverage for any business losses incurred by Plaintiffs and the other members of the Extra Expense Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Erie has breached its coverage obligations under the policies.

87.     As a result of Erie's breaches of the policies, Plaintiffs and the other members of the Extra Expense Breach Class have sustained substantial damages for which Ere is liable, in an amount to be established at trial.

**COUNT IV**
**BREACH OF CONTRACT – SUE AND LABOR COVERAGE**
**(Claim Brought on Behalf of the Sue and Labor Breach Class)**

88.     Plaintiffs La Villa and Rose Glam repeat and reallege Paragraphs 1-63 as if fully set forth herein.

89.     Plaintiffs bring this Count individually and on behalf of the other members of the Sue and Labor Breach Class.

90.     Plaintiffs' Erie policies, as well as those of the other Sue and Labor Breach Class members, are contracts under which Erie was paid premiums in exchange for its promise to pay Plaintiffs and the other Sue and Labor Breach Class members' losses for claims covered by the policy.

91.     In the Ultrapack Property Coverage Form, Erie agreed to give due consideration in settlement of a claim to expenses incurred in taking all reasonable steps to protect Covered Property from further damage.

92.     In complying with the Closure Orders and otherwise suspending or limiting operations, Plaintiffs and other members of the Sue and Labor Breach Class incurred expenses in connection with reasonable steps to protect Covered Property.

93.     Plaintiffs and the other members of the Sue and Labor Breach Class have complied with all applicable provisions of the policy and/or those provisions have been waived by Erie, or Erie is estopped from asserting them, and yet Erie has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

94.     By denying coverage for any Sue and Labor expenses incurred by Plaintiffs and the other members of the Sue and Labor Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Erie has breached its coverage obligations under the policies.

95.     As a result of Erie's breaches of the policies, Plaintiffs and the other members of the Sue and Labor Breach Class have sustained substantial damages for which Erie is liable, in an amount to be established at trial.

## COUNT V
## DECLARATORY JUDGMENT – INCOME PROTECTION COVERAGE
**(Claim Brought on Behalf of the Business Income Protection Declaratory Judgment Class)**

96.     Plaintiffs High Tech Hair, La Villa, and Rose Glam ("Plaintiffs," for the purposes of this Count) repeat and reallege Paragraphs 1-63 as if fully set forth herein.

97.     Plaintiffs bring this Count individually and on behalf of the other members of the Income Protection Declaratory Judgment Class.

98.     Plaintiffs' Erie policies, as well as those of the other Income Protection Declaratory Judgment Class members, are contracts under which Erie was paid premiums in exchange for its promise to pay Plaintiffs and the other Income Protection Declaratory Judgment Class members' losses for claims covered by the policy.

99.     Plaintiffs and the other Income Protection Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been

waived by Erie, or Erie is estopped from asserting them, and yet Erie has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs and the other Income Protection Declaratory Judgment Class members are entitled.

100.    Erie has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

101.    An actual case or controversy exists regarding Plaintiffs and the other Income Protection Declaratory Judgment Class members' rights and Erie's obligations under the policies to reimburse Plaintiff for the full amount of income losses incurred by Plaintiffs and the other Income Protection Declaratory Judgment Class members in connection with suspension of their businesses stemming from the COVID-19 pandemic.

102.    Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Income Protection Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

    i.    Plaintiffs and the other Income Protection Declaratory Judgment Class members' income losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

    ii.    Erie is obligated to pay Plaintiffs and the other Income Protection Declaratory Judgment Class members for the full amount of the income losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT VI**
**DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)**

103.     Plaintiffs High Tech Hair, La Villa, and Rose Glam ("Plaintiffs," for the purposes of this Count) repeat and reallege Paragraphs 1-63 as if fully set forth herein.

104.     Plaintiffs brings this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

105.     Plaintiffs' Erie insurance policies, as well as those of the other Civil Authority Declaratory Judgment Class members, are contracts under which Erie was paid premiums in exchange for its promise to pay Plaintiffs and the other Civil Authority Declaratory Judgment Class members' losses for claims covered by the policy.

106.     Plaintiffs and the other Civil Authority Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Erie, or Erie is estopped from asserting them, and yet Erie has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs and the other Class members are entitled.

107.     Erie has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

108.     An actual case or controversy exists regarding Plaintiffs and the other Civil Authority Declaratory Judgment Class members' rights and Erie's obligations under the policies to reimburse Plaintiffs and the other Civil Authority Declaratory Judgment Class members for the full amount of covered Civil Authority losses incurred by Plaintiff and the other Civil Authority Declaratory Judgment Class members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

109.     Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Civil Authority Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

i.    (1)     Plaintiffs and the other Civil Authority Declaratory Judgment Class members' Civil Authority losses incurred in connection with the Closure Orders

and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

ii.     (2)     Erie is obligated to pay Plaintiffs and the other Civil Authority Declaratory Judgment Class members the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT VII**
**DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE**
**(Claim Brought on Behalf of the Extra Expense Declaratory Judgment Class)**

110.     Plaintiffs High Tech Hair, La Villa, and Rose Glam ("Plaintiffs," for the purposes of this Count) repeat and reallege Paragraphs 1-63 as if fully set forth herein.

111.     Plaintiffs bring this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class.

112.     Plaintiffs' Erie insurance policies, as well as those of the other Extra Expense Declaratory Judgment Class members, are contracts under which Erie was paid premiums in exchange for its promise to pay Plaintiffs and the other Extra Expense Declaratory Judgment Class members' losses for claims covered by the policy.

113.     Plaintiffs and the other Extra Expense Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Erie, or Erie is estopped from asserting them, and yet Erie has abrogated its insurance coverage obligations pursuant to the policies clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs and the other Class members are entitled.

114.     Erie has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

115.     An actual case or controversy exists regarding Plaintiffs and the other Extra Expense Declaratory Judgment Class members' rights and Erie's obligations under the policies to reimburse Plaintiffs and the other Extra Expense Declaratory Judgment Class members for the full amount of Extra Expense losses incurred by Plaintiffs in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

116.     Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Extra Expense Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

    i.    Plaintiffs and the other Extra Expense Declaratory Judgment Class members' Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

    ii.    Erie is obligated to pay Plaintiffs and the other Extra Expense Declaratory Judgment Class members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT VIII**
**DECLARATORY JUDGMENT – SUE AND LABOR COVERAGE**
**(Claim Brought on Behalf of the Sue and Labor Declaratory Judgment Class)**

117.     Plaintiffs Rose Glam, High Tech Hair, and La Villa ("Plaintiffs," for the purposes of this Count) repeat and reallege Paragraphs 1-63 as if fully set forth herein.

118.     Plaintiffs bring this Count individually and on behalf of the other members of the Sue and Labor Declaratory Judgment Class.

119.     Plaintiffs' Erie insurance policies, as well as those of the other Sue and Labor Declaratory Judgment Class members, are contracts under which Erie was paid premiums in exchange for its promise to pay Plaintiffs and the other Sue and Labor Declaratory Judgment Class members' reasonably incurred expenses to protect Covered Property.

22

120.    Plaintiffs and the other Sue and Labor Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Erie, or Erie is estopped from asserting them, and yet Erie has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs and other class members are entitled.

121.    Erie has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

122.    An actual case or controversy exists regarding Plaintiffs and the other Sue and Labor Declaratory Judgment Class members' rights and Erie's obligations under the policies to reimburse Plaintiff and the other Sue and Labor Declaratory Judgment Class members for the full amount Plaintiffs and the other members of the Sue and Labor Declaratory Judgment Class reasonably incurred to protect Covered Property from further damage by COVID-19.

123.    Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Sue and Labor Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

    i.    Plaintiffs and the other Sue and Labor Declaratory Judgment Class members reasonably incurred expenses to protect Covered Property from further damage by COVID-19 are insured losses under their policies; and

    ii.    Erie is obligated to pay Plaintiffs and the other Sue and Labor Declaratory Judgment Class members for the full amount of the expenses they reasonably incurred to protect Covered Property from further damage by COVID-19.

## VII.    REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

a.      Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiffs as Class representatives, and appointing Plaintiffs' undersigned attorneys as Counsel for the Classes;

b.      Entering judgment on Counts I-IV in favor of Plaintiffs La Villa and Rose Glam and the members of the Income Protection Breach Class, the Civil Authority Breach Class, the Extra Expense Breach Class, and the Sue and Labor Breach Class; and awarding damages for breach of contract in an amount to be determined at trial;

c.      Entering declaratory judgments on Counts V-VIII in favor of Plaintiffs High Tech Hair, La Villa, and Rose Glam and the members of the Income Protection Declaratory Judgment Class, the Civil Authority Declaratory Judgment Class, the Extra Expense Declaratory Judgment Class, and the Sue and Labor Declaratory Judgment Class as follows:

i.      Income Protection, Civil Authority, Extra Expense, and Sue and Labor losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

ii.     Erie is obligated to pay for the full amount of the Income Protection, Civil Authority, Extra Expense, and Sue and Labor losses incurred and to be incurred related to COVID-19, the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic;

d.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

e.      Ordering Defendant to pay attorneys' fees and costs of suit; and

f.      Ordering such other and further relief as may be just and proper.


## VIII.   JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated: June 17, 2020                           Respectfully submitted,

                                               /s/ *Robert J. Mongeluzzi*
                                               Robert J. Mongeluzzi; ID No. 36283
                                               Jeffrey P. Goodman; ID No. 309433
                                               Samuel B. Dordick; ID No. 322647
                                               **SALTZ MONGELUZZI &**
                                               **BENDESKY P.C.**
                                               One Liberty Place
                                               1650 Market Street, 52nd Floor
                                               Philadelphia, PA 19103
                                               Telephone: 215-496-8282
                                               rmongeluzzi@smbb.com
                                               jgoodman@smbb.com
                                               sdordick@smbb.com

                                               Patrick Howard; ID No. 88572
                                               **SALTZ MONGELUZZI &**
                                               **BENDESKY P.C.**
                                               120 Gibraltar Road, Suite 218
                                               Horsham, PA 19044
                                               Telephone: 215-496-8282
                                               phoward@smbb.com

                                               Adam J. Levitt*
                                               Amy E. Keller*
                                               Daniel R. Ferri*
                                               Mark Hamill*
                                               Laura E. Reasons*
                                               **DICELLO LEVITT GUTZLER LLC**
                                               Ten North Dearborn Street, Sixth Floor
                                               Chicago, Illinois  60602
                                               Telephone:  312-214-7900
                                               alevitt@dicellolevitt.com
                                               akeller@dicellolevitt.com
                                               dferri@dicellolevitt.com
                                               mhamill@dicellolevitt.com
                                               lreasons@dicellolevitt.com

                                               Kenneth P. Abbarno*
                                               Mark A. DiCello
                                               Mark Abramowitz*
                                               **DICELLO LEVITT GUTZLER LLC**
                                               7556 Mentor Avenue
                                               Mentor, Ohio  44060
                                               Telephone:  440-953-88

kabbarno@dicellolevitt.com
madicello@dicellolevitt.com
mabramowitz@dicellolevitt.com

Mark Lanier*
Alex Brown*
Skip McBride*
**THE LANIER LAW FIRM PC**
10940 West Sam Houston Parkway North
Suite 100
Houston, Texas  77064
Telephone:  713-659-5200
WML@lanierlawfirm.com
alex.brown@lanierlawfirm.com
skip.mcbride@lanierlawfirm.com

Timothy W. Burns*
Jeff J. Bowen*
Jesse J. Bair*
Freya K. Bowen*
**BURNS BOWEN BAIR LLP**
One South Pinckney Street, Suite 930
Madison, Wisconsin 53703
Telephone: 608-286-2302
tburns@bbblawllp.com
jbowen@bbblawllp.com
jbair@bbblawllp.com
fbowen@bbblawllp.com

Douglas Daniels*
**DANIELS & TREDENNICK**
6363 Woodway, Suite 700
Houston, Texas  77057
Telephone:  713-917-0024
douglas.daniels@dtlawyers.com

*Counsel for Plaintiff*
*and the Proposed Classes*

*Applications for admission *pro hac vice* to be filed